UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JACK M. RAY                                CIVIL ACTION NO. 05-0090

versus                                     JUDGE HICKS
                                           **REFERRED TO:**
COMMISSIONER OF THE SOCIAL                 **MAGISTRATE JUDGE HORNSBY**
SECURITY ADMINISTRATION

_____

**MEMORANDUM RULING**

**Introduction**

Jack Ray ("Plaintiff") filed a claim for disability benefits based on back pain. Plaintiff has a twelfth grade education and past work experience that includes employment as a laminator. He was 47 years old when ALJ Bundy denied his claim. The Appeals Council reviewed additional evidence submitted by Plaintiff but found no reason to review the ALJ's decision. Plaintiff then filed this civil action to seek the limited judicial review permitted by 42 U.S.C. § 405(g). Both parties filed written consent to have the case decided by a magistrate judge and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court regarding social security cases, the case was referred to the undersigned for decision and entry of judgment.

**Issues on Appeal**

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. He then denied the claim at step four of the five-step sequential analysis, based on a finding that Plaintiff's RFC permitted him to perform the demands of

his past work as a laminator as that job is ordinarily performed. The ALJ made an alternative step-five finding that Rule 202.21 directed a determination of not disabled.

Plaintiff attacks that decision based on three asserted errors: (1) the ALJ's finding that Plaintiff did not meet the requirements of Listing 1.04 (disorders of the spine) is not supported by substantial evidence; (2) the finding that Plaintiff can perform his past relevant work is not consistent with the definition of light work or the RFC assessed by the ALJ; and (3) the use of Rule 202.21 was not permitted.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Listing 1.04**

The ALJ found that Plaintiff was not engaged in substantial gainful activity (step one) and that he suffered from a severe impairment (step two) in the form of mild degenerative disc disease of the lumbar spine. He next found that the impairment was not severe enough

to meet or medically equal a listing (step three). He specifically addressed Listing 1.04 as follows:

> Listing 1.04 was not met because [Plaintiff] did not have evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion in the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory and reflex loss or positive straight-leg raising test (sitting and supine).

Tr. 17.

A claimant bears the burden at step three to demonstrate that he meets or equals each requirement of a listing. The relevant part of the listing at issue provides as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

The record includes reports from a number of physicians who made findings that are not consistent with the requirements of the listing. For example, Dr. Carl Goodman found no sensory or reflex loss, and he deemed Plaintiff's strength at 5/5. He concluded that he could "find no objective abnormalities to explain [Plaintiff's] continued pain and disability." Tr. 95-96.

Dr. Edwin Simonton, Jr. conducted a consultative examination and found that Plaintiff had normal and equal sensation in his lower extremities, only minimal disc bulging with no evidence of spinal canal stenosis, and normal results on EMG and nerve conduction studies. Dr. Simonton concluded that Plaintiff had recovered from the injuries he sustained in a fall four years earlier and was capable of returning to gainful employment. Tr. 98-99.

Dr. Robert Holladay, an orthopedic specialist, conducted a consultative examination. He, like the other physicians, found no spasms, and the lumbar spine had only some generalized tenderness, more on the right than the left. Straight leg raising, as it did when other physicians conducted the test, elicited complaints of pain. Motor strength was 5/5 in all motor groups in both lower extremities, and there was no sensory deficit in either lower extremity. X-rays and an MRI showed only mild degenerative changes at L4-L5. Dr. Holladay found "no evidence of obvious neurological abnormality" during the examination, but he noted that Plaintiff had a lot of subjective complaints of pain and a fairly high level of perceived disability and impairment. He concluded that Plaintiff was capable of using his upper extremities for grasp, fine manipulation, pushing and pulling and reaching overhead. He also found that Plaintiff could sit, stand or walk for up to an hour, with a break afterwards. He also found that Plaintiff could occasionally lift and carry up to 20 to 25 pounds, and could frequently lift and carry up to 10 or 15 pounds. Tr. 139-41.

Dr. Timothy Talbert completed a report in connection with a worker's compensation claim. Talbert admitted that he did not have previous studies, such as an MRI, that could

have been helpful, but he concluded that Plaintiff's level of pain was disabling. Tr. 184-86. The ALJ acted well within his discretion when he chose not to afford great weight to this "one time cursory evaluation" that was not consistent with other evidence. Tr. 16.

After the ALJ's decision, Plaintiff submitted to the Appeals Council a Listing 1.04 assessment form completed by treating physician Dr. Pierce Nunley. Plaintiff had a long history of conservative treatment by Dr. Nunley. On the form, Dr. Nunley checked a box to indicate that Plaintiff had evidence of nerve root compression. His description was: "Pain distribution in right leg, mild positive straight leg raise" on the right. He did not, however, find any limitation of motion of the spine, muscle weakness, sensory or reflex loss and other critical components of the listing. Tr. 195-98.

It does not appear that any single physician made specific findings that were consistent with Plaintiff meeting or equaling all of the demands of the listing. Plaintiff urges that the various reports "taken together" are sufficient, but that is the case only if one *picks and chooses* from each report only the evidence that tends to support Plaintiff's claims and ignores findings (such as those discussed above) that are to the contrary. With the burden on Plaintiff at this step, he has not shown that the ALJ's rejection of the listing's applicability is not supported by substantial evidence. Rather, the ALJ's decision appears to be quite reasonable.

Plaintiff also argues that the ALJ was required by SSR 96-6p to obtain an updated medical opinion from a medical expert after receipt of Dr. Nunley's report. The portion of

the Ruling relied upon by Plaintiff sets forth guidelines for an ALJ or the Appeals Council to rely on a finding by a State agency medical consultant that a claimant's impairment is not equivalent to a listing. The Ruling states that the ALJ or Appeals Council must obtain an updated medical opinion from a medical expert in certain circumstances, including when additional medical evidence is received that, in the opinion of the ALJ or Appeals Council, may change the State agency medical consultant's finding with regard to equivalency. The ALJ in this case did consider findings of state agency examiners (Tr. 18), but he relied primarily upon the many other first-hand medical opinions described above and in his written decision. The relevant portion of the Ruling does not appear to be applicable in this situation. Furthermore, the Appeals Council considered Dr. Nunley's report and apparently was not of the opinion that it undermined the prior evidence to the extent that a medical expert was necessary. The Appeals Council did not say that specifically in its written denial of review, but the record plainly supports its decision.

**Past Work as a Laminator**

The ALJ found that Plaintiff had the RFC to perform light work activity. He then observed that: "Light work is described as lifting a maximum of 20 pounds and frequently lifting 10 pounds, with standing/walking six hours a day and *occasional use of arm and/or leg controls*." (emphasis added). Tr. 18. He later determined that Plaintiff could perform the job of laminator, as it is generally performed. He cited as evidence the Dictionary of Occupational Titles, Entry 554.685-030. The DOT's definition of the job lists light work

under the strength requirement. Plaintiff points out that the job also is listed as requiring *frequent reaching and handling*, which he says is inconsistent with the RFC found by the ALJ.

The ALJ did not place any limitations on Plaintiff's ability to reach or handle items, which is different from the ability to push and pull arm or leg controls. The DOT description describes the job as requiring a person to turn a hand wheel, turn dials, move levers to set machine roller speed and other settings, turn valves to replenish glue supply, and depress buttons to start the machine. Those tasks are not inconsistent with the RFC assessed by the ALJ or the evidence regarding Plaintiff's abilities. There is certainly no indication that Plaintiff's back pain prevents him from handling objects, pressing buttons, turning dials or the like, and Dr. Holladay found that Plaintiff could use his arms for "grasp, fine manipulation, pushing and pulling, and reaching overhead." Tr. 141. Substantial evidence supports the ALJ's step-four finding.

**Rule 202.21**

Plaintiff complains that the alternative invocation of Rule 202.21 is improper because reaching and handling are non-exertional limitations. The ALJ did not, however, find that Plaintiff had such non-exertional limitations and, as noted above, there is substantial evidence to the contrary. Accordingly, reliance on the Rule was permissible under Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). Furthermore, this was merely an alternative finding that, if incorrect, would not require reversal.

**Conclusion**

Substantial evidence has been found to support the Commissioner's decision. A judgment will be entered affirming the denial of benefits.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 17th day of March, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE